20-1916-pr

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2021

(Argued: October 27, 2021      Decided:  March 9, 2023)

Docket No. 20-1916-pr

_____

ARCHIE COSEY,

*Petitioner-Appellant*,

v.

LYNN LILLEY, SUPERINTENDENT OF WOODBOURNE
CORRECTIONAL FACILITY,

*Respondent-Appellee*.

_____

Before:

KEARSE, LOHIER, and PARK, *Circuit Judges*.

After pleading guilty to first-degree conspiracy and second-degree murder in state court, petitioner Archie Cosey filed an unsuccessful federal habeas petition as well as an unsuccessful motion in state court to vacate his conviction.  In this second habeas petition presently before us, Cosey argues that newly discovered evidence shows that he is actually innocent of the murder charge.  The United States District Court for the Southern District of New York (Koeltl, J.) dismissed the petition as both procedurally barred and lacking merit.  Although Cosey's petition was filed after the one-year time limit in 28 U.S.C. § 2244(d), he argues, based on Schlup v. Delo, 513 U.S. 298 (1995), for an equitable exception to the time limit based on a sufficient

showing of actual innocence.  Because Cosey fails to show that it is "more likely than not that no reasonable juror would have convicted him," Schlup, 513 U.S. at 327, his petition is time-barred.  We AFFIRM.

Judge Park concurs in a separate opinion.

GLENN A. GARBER (Rebecca E. Freedman, *on the brief*), The Exoneration Initiative, New York, NY, *for Petitioner-Appellant* Archie Cosey.

STEPHEN KRESS, Assistant District Attorney (Karen Schlossberg, Assistant District Attorney, *on the brief*), *for* Cyrus R. Vance, Jr., District Attorney of New York County, New York, NY, *for Respondent-Appellee* Lynn Lilley.

Parvin Daphne Moyne, Elise B. Maizel, Andrew A. McWhorter, Akin Gump Strauss Hauer & Feld LLP, New York, NY; Zara H. Shore, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, *for Amici Curiae* The Innocence Project and Centurion Ministries, Inc., *in support of Petitioner-Appellant* Archie Cosey.

PER CURIAM:

The Antiterrorism and Effective Death Penalty Act ("AEDPA") erects a difficult series of procedural and substantive barriers for prisoners who collaterally attack their state convictions in federal court.  Consider, for example, the strict one-year time limit to file a federal habeas petition.  See 28

2

U.S.C. § 2244(d)(1).[1]  Under Schlup v. Delo, 513 U.S. 298 (1995), petitioners who assert their actual innocence are barred by this time limit unless new evidence shows that "'it is more likely than not that no reasonable juror would have convicted'" them.  McQuiggin v. Perkins, 569 U.S. 383, 395 (2013) (quoting Schlup, 513 U.S. at 329).  The actual innocence exception to the one-year time limit "may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief" upon "a credible showing of actual innocence."  Id. at 392.  But the claim of actual innocence — also known as a Schlup claim — is not itself a constitutional claim.  It serves instead as a gateway through which a habeas petitioner must pass to have his otherwise time-barred constitutional claim heard on the merits.

Petitioner Archie Cosey pleaded guilty in 1998 in state court to first-degree conspiracy to engage in drug trafficking and second-degree murder and was sentenced to two concurrent terms of twenty-five years to life in

---

[1] 28 U.S.C. § 2244(d)(1) provides: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."

prison. Two decades later, with a failed federal habeas petition and a failed motion in New York state court to vacate his conviction behind him, Cosey filed a second federal habeas petition under 28 U.S.C. § 2254, claiming, among other things, that newly discovered evidence demonstrated that he was innocent of the murder charge.

The United States District Court for the Southern District of New York (Koeltl, J.) dismissed Cosey's petition because it failed to meet the threshold requirements of 28 U.S.C. § 2244(b)(2)(B)(ii);[2] it was untimely under § 2244(d)(1); and, in any event, the claims underlying the petition lacked merit.

Based on the record before us, we agree with the District Court that it is more likely than not that a reasonable juror would have convicted Cosey of murder and that he therefore failed to demonstrate his actual innocence. See

---

[2] 28 U.S.C. § 2244(b)(2)(B)(ii) provides: "A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless . . . the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

<u>Schlup</u>, 513 U.S. at 327.  Cosey's petition is therefore barred by AEDPA's one-year time limit.  **AFFIRMED**.

**BACKGROUND**

"In reviewing a gateway claim of actual innocence, a court 'must consider all [record] evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'"  <u>Hyman v. Brown</u>, 927 F.3d 639, 643 (2d Cir. 2019) (quoting <u>House v. Bell</u>, 547 U.S. 518, 538 (2006)).  The following facts are drawn from the extensive record before the District Court, including the record of Cosey's state post-conviction proceedings under New York Criminal Procedure Law § 440.10.

On August 3, 1993, James Williams was murdered in the Harlem brownstone headquarters of a violent drug trafficking gang run by Carl Dushain.  Suspecting that Williams was a police informant who had also stolen from his gang, Dushain recruited Danny Green, a gang member, to kill Williams for $500.  By sheer coincidence, at nearly the time that Green is alleged to have shot Williams from inside the brownstone, a rival gang shot at

the same brownstone from the street, apparently in retaliation for an unrelated prior gunfight.

The State contends that Dushain's gang killed Williams. It claims that Green pulled the trigger, David Bobbitt served as a lookout outside the brownstone, and Cosey and Chris Ortiz[3] blocked Williams's escape. Cosey disputes the State's version of events and contends that Williams was killed by the second, rival gang shooting.

Four years after Williams's murder, Cosey, Dushain, Green, and Ortiz were arrested and charged with the murder as well as drug conspiracy and an unrelated kidnapping. Dushain and Green proceeded to trial and were convicted of the murder and several other charges, in part based on the testimony of Janet Hutchens and other witnesses who also implicated Cosey.[4]

---

[3] The record sometimes also refers to Chris Ortiz as "David" Ortiz.

[4] The District Court described the trial testimony of Hutchens as follows:

> Hutchens went to 162 West 123rd Street on the night of August 3, 1993 to meet Williams. Dushain, Green, and [Cosey] then arrived and began arguing with Williams in the building; Ortiz joined five to ten minutes later. Dushain told Hutchens to go to the rear apartment on the first floor and shut the door. Hutchens opened the door anyway and saw [Cosey] and Ortiz beat Williams,

6

By contrast, in October 1998 Cosey pleaded guilty in New York state court to first-degree conspiracy to engage in narcotics trafficking and second-degree murder, in violation of New York Penal Law §§ 105.17 and 125.25. In his plea allocution, Cosey admitted to conspiring with Dushain and others to murder Williams. Cosey described Williams's role at the Harlem brownstone and membership in the gang, identified Green as the shooter, and admitted that he "knew [Williams] was about to be killed on the orders of Carl Dushain." App'x 68–69. Cosey also confessed that he "prevent[ed] Mr. Williams from leaving the hallway" where Williams was shot. App'x 69.

At sentencing less than a month later, Cosey moved to withdraw his plea, claiming, among other things, that it had been coerced, that his counsel was ineffective, and as relevant here, that he was innocent of the murder charge. The state court found that Cosey's plea was knowing and voluntary and denied the motion. It then sentenced Cosey principally to two concurrent

---

while Green went upstairs to retrieve the gun. Green ultimately fired two shots at Williams, the second one of which hit Williams. Williams was already down, and after he was shot, laid out onto the floor.

Cosey v. Lilley, 460 F. Supp. 3d 346, 357 (S.D.N.Y. 2020) (cleaned up).

terms of twenty-five years to life in prison.  The New York Appellate Division affirmed the conviction, see People v. Cosey, 730 N.Y.S.2d 434 (1st Dep't 2001), and Judge Smith of the New York Court of Appeals denied his petition for leave to appeal to that court, see People v. Cosey, 97 N.Y.2d 655 (2001).

On August 6, 2002, Cosey filed his first federal habeas petition challenging his state convictions.  The district court (Scheindlin, J.) denied that petition.  See Cosey v. Walsh, No. 02 Civ. 6251, 2003 WL 1824640 (S.D.N.Y. Apr. 8, 2003).  In October 2011 Cosey filed a motion in state court to vacate his murder conviction under New York Criminal Procedure Law § 440.10, reasserting, as relevant here, that he was actually innocent.  The state court held a hearing on Cosey's § 440.10 motion, during which a number of witnesses testified, including: Yolanda Summers, Cosey's ex-wife and the mother of his children, who stated that Cosey was with her down the street when Williams was shot at the brownstone; Donald Anderson, a bystander who stated that he saw Cosey run to the brownstone after the rival gang's attack but could not confirm where Cosey was when Williams was killed; David Bobbitt, a member of Dushain's gang, who testified that Williams was

8

killed by the rival gang shooting and that after he had already seen Williams's dead body inside he saw Cosey running to the brownstone; Hutchens, another member of Dushain's gang, who during the hearing recanted her testimony implicating Cosey in Williams's murder; Sarah Wallace, a reporter who claimed that Chris Ortiz, the State's main witness at the trial of Dushain and Green, had recanted his prior testimony implicating Cosey; and Cosey himself. The state court also heard testimony from forensic and ballistics experts and considered new forensic evidence regarding the bullet's trajectory through Williams's body.

After the hearing, the state court denied Cosey's motion. As relevant to Cosey's claim of actual innocence, the court found that Summers, Hutchens, Bobbitt, and Cosey were unreliable witnesses and that the remainder of the lay testimony, all of which was elicited on Cosey's behalf, was unreliable hearsay or otherwise fell short of showing by clear and convincing evidence that Cosey was not inside the brownstone when Williams was murdered.[5]

_____

[5] Under New York law, "[t]o prevail upon an actual innocence claim, the convicted person must produce clear and convincing proof of innocence." People v. Cosey, 54

9

The state court also considered the extensive forensic evidence, which, in its view, strongly suggested that Williams was more likely to have been killed by the rival gang shooting. See People v. Cosey, 54 Misc.3d 1208(A), 52 N.Y.S.3d 247, 2016 WL 7812677, at *9 (N.Y. Sup. Ct. 2016). But it deemed the forensic evidence "ultimately inconclusive" as to Cosey's innocence because the State's theory of the case was also "physically . . . [and] technically possible." Id.

The New York Appellate Division denied Cosey's petition for leave to appeal the state post-conviction court's denial of his § 440.10 motion, see People v. Cosey, 2017 WL 4159289 (1st Dep't 2017), and his subsequent petition for leave to appeal to the New York Court of Appeals was dismissed, see People v. Cosey, No. 8131/97 (N.Y. Dec. 4, 2017).

In December 2018 Cosey filed this second federal habeas petition, essentially incorporating the arguments made in his § 440.10 motion in state

Misc.3d 1208(A), 52 N.Y.S.3d 247, 2016 WL 7812677, at *8 (N.Y. Sup. Ct. 2016) (citing People v. Hamilton, 979 N.Y.S.2d 97 (2d Dep't 2014)).

10

court.[6]  The District Court dismissed the petition after concluding that it failed to meet the threshold requirements of § 2244(b)(2)(B)(ii); it was untimely under § 2244(d)(1); and, in any event, Cosey's arguments lacked merit.  See Cosey v. Lilley, 460 F. Supp. 3d 346, 362–81 (S.D.N.Y. 2020).  Recognizing that "the resolution of these issues involve[d] substantial constitutional issues," the District Court issued a certificate of appealability for this Court to consider whether Cosey's petition satisfied the requirements of § 2244(b)(2)(B) and whether it was sufficient to overcome the time bar in  § 2244(d)(1).  Id. at 381.

This appeal followed.

**DISCUSSION**

Cosey raises three claims on appeal.  First and foremost, he claims that he is actually innocent of the murder charge, notwithstanding his guilty plea.

---

[6] The Superintendent moved to transfer the petition to this Court as an unauthorized second or successive habeas petition.  On May 29, 2019, we granted Cosey's motion for leave to file a successive § 2254 petition and directed the District Court to address whether Cosey's actual innocence claims "must satisfy the § 2244(b)(2) standards," and "whether he has in fact satisfied the requirements of § 2244."  App'x 1415–16.

Second, he asserts that the State withheld exculpatory information in violation of Brady v. Maryland, 373 U.S. 83 (1963). And third, he contends that the State also violated his right to due process under the Fourteenth Amendment by depriving him of a fair hearing on the motion to withdraw his plea. As a threshold matter, we can consider these claims only if Cosey can demonstrate that his petition is not time-barred under § 2244(d)(1) and that it satisfies the criteria for second and successive petitions under § 2244(b)(2). Because Cosey acknowledges that his petition was not timely filed within § 2244(d)'s one-year time limit and that the time period was not otherwise equitably tolled,[7] we proceed with the understanding that his petition was not timely filed.

---

[7] "[T]he limitations period in § 2241(d) 'is subject to equitable tolling in appropriate cases' — specifically, where the petitioner shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Rivas v. Fischer, 687 F.3d 514, 538 (2d Cir. 2012) (quoting Holland v. Florida, 560 U.S. 631, 645, 649 (2010)); see Doe v. Menefee, 391 F.3d 147, 175 (2d Cir. 2004) (Sotomayor, J.) (discussing the requirements necessary to qualify for equitable tolling). Equitable tolling in this sense differs from Schlup's equitable exception to AEDPA's one-year time limit in that equitable tolling extends AEDPA's statute of limitations, while a Schlup actual innocence claim excuses an untimely filing. See McQuiggin, 569 U.S. at 392 ("[Petitioner] thus seeks an equitable exception to § 2244(d)(1), not an extension of the time statutorily prescribed.")

12

Instead, Cosey claims to have made a "credible and compelling showing of actual innocence under the standard described by the Supreme Court in Schlup" as to "warrant[] an equitable exception to AEDPA's limitation period, allowing [him] to have his otherwise time-barred claims heard by a federal court."  Rivas v. Fischer, 687 F.3d 514, 518 (2d Cir. 2012). As we explain below, we conclude that Cosey has not made the showing necessary to warrant the equitable exception under Schlup, and that his petition is therefore time-barred.

I.      **AEDPA's Gateway Exception for Actual Innocence**[8]

The actual innocence gateway (or Schlup) exception to AEDPA's one-year statute of limitations reflects the basic principle that "[s]ensitivity to the

---

(emphasis in original).  So the Schlup equitable exception may apply even where equitable tolling is unavailable.  See Rivas, 687 F.3d at 547 n.42.

[8] The Superintendent asserts, in a footnote, that "[i]t can be argued that the actual innocence gateway . . . does not apply to second or successive petitions authorized by the circuit courts" because § 2244(b)(4) directs courts to dismiss "'any claim' in a second or successive petition 'unless the applicant shows that the claim satisfies the requirements of this section,'" which (according to the Superintendent) include § 2244(d)'s statute of limitations.  Appellee's Br. 24 n.11 (quoting 18 U.S.C. § 2244(b)(4) (emphasis in brief)).  The District Court rejected this argument.  See Cosey, 460 F. Supp. 3d at 373–74.  Because the parties did not adequately raise or brief this issue, we assume without deciding that a Schlup actual innocence gateway claim may apply to second or successive petitions.

13

injustice of incarcerating an innocent individual should not abate when the impediment is AEDPA's statute of limitations."  McQuiggin, 569 U.S. at 393. This equitable exception "balance[s] the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case."  Schlup, 513 U.S. at 324.  "[I]n 'appropriate cases,' the principles of comity and finality that underlie federal habeas corpus review 'must yield to the imperative of correcting a fundamentally unjust incarceration.'"  Rivas, 687 F.3d at 540 (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)).

But "tenable actual-innocence gateway pleas are rare."  McQuiggin, 569 U.S. at 386.  And even a successful actual innocence claim "cannot itself afford [a petitioner] habeas relief from his state conviction.  It can only open a gateway to federal review of an otherwise procedurally barred . . . claim that, if itself successful, could afford him relief."  Hyman, 927 F.3d at 655.  In other

words, even if it succeeds, a Schlup claim cannot provide relief on the merits. See McQuiggin, 569 U.S. at 386.

Section 2244(d)'s one-year deadline for state prisoners to file a federal habeas petition generally starts as of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). If a petition claims newly discovered evidence, however, then the one-year clock starts on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Id. § 2244(d)(1)(D). Under the standard announced in Schlup, failure to file within a year can be excused in a "narrow class of truly extraordinary cases [that] consists of those presenting credible and compelling claims of actual innocence." Hyman, 927 F.3d at 656 (quotation marks omitted); see also Rivas, 687 F.3d at 541 ("To satisfy the Schlup standard, a claim of actual innocence must be both credible and compelling." (quotation marks omitted)).

"For the claim to be 'credible,' it must be supported by 'new reliable evidence — whether it be exculpatory scientific evidence, trustworthy

15

eyewitness accounts, or critical physical evidence — that was not presented at trial.'" Rivas, 687 F.3d at 541 (quoting Schlup, 513 U.S. at 324). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt — or[,] to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" Id. (quoting House, 547 U.S. at 538). As we explained in Doe v. Menefee:

> The Schlup Court carefully limited the type of evidence on which an actual innocence claim may be based and crafted a demanding standard that petitioners must meet in order to take advantage of the gateway. The petitioner must support his claim 'with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.' Because Schlup explicitly states that the proffered evidence must be reliable, the habeas court must determine whether the new evidence is trustworthy by considering it both on its own merits and, where appropriate, in light of the pre-existing evidence in the record. Once it has been determined that the new evidence is reliable, Schlup unequivocally requires that reviewing courts consider a petitioner's claim in light of the evidence in the record as a whole, including

16

evidence that might have been inadmissible at trial . . . .

391 F.3d 147, 161-62 (2d Cir. 2004) (Sotomayor, J.) (quoting Schlup, 513 U.S. at 324, 327–28).  The new evidence must be so compelling that "a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  Schlup, 513 U.S. at 316.

## II.     Review of State Court Factual Determinations

"AEDPA . . . provides that in a habeas proceeding challenging a state conviction, 'a determination of a factual issue made by a State court shall be presumed to be correct.'"  Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010) (quoting § 2254(e)(1)).  "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  So when a federal court analyzes the merits of a habeas petition, a "'presumption of correctness'" applies to the factual findings of the state post-conviction court absent "'clear and convincing evidence'" to the

17

contrary. Cotto v. Herbert, 331 F.3d 217, 233 (2d Cir. 2003) (quoting § 2254(e)(1)).

It is settled that "we review [a] district court's ultimate finding [relating to] actual innocence de novo." Rivas, 687 F.3d at 543 (quoting Doe, 391 F.3d at 163). This is "[b]ecause the determination as to whether no reasonable juror would find a petitioner guilty beyond a reasonable doubt is a mixed question of law and fact." Id. (quoting Doe, 391 F.3d at 163).

But the standard of review with respect to the underlying factual findings of the state post-conviction court is less settled. In particular, an unresolved question for our Court is whether the presumption of correctness likewise applies when we consider whether a petition satisfies the Schlup gateway standard. Noting, among other things, that the presumption is codified in § 2254(e)(1), which applies in any "proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court," a number of our sister circuits have applied the presumption to Schlup gateway claims. See, e.g., Goldblum v. Klem, 510 F.3d 204, 221 n.13 (3d Cir. 2007); Sharpe, 593 F.3d at 379; Reed v. Stephens, 739 F.3d

18

753, 772 n.8 (5th Cir. 2014); Storey v. Roper, 603 F.3d 507, 524 (8th Cir. 2010); Fontenot v. Crow, 4 F.4th 982, 1018, 1034–35 (10th Cir. 2021). As the Fourth Circuit reasoned, "Section 2254(e)(1) . . . come[s] into play because it refers to the determination of a factual issue — that is, to a state court's findings of fact, rather than its conclusions of federal law." Sharpe, 593 F.3d at 378 (quotation marks omitted).

We now join our sister circuits in holding that, in the context of a gateway claim of actual innocence under Schlup, a federal habeas court must presume that a state court's factual findings are correct, rebuttable only upon a showing of clear and convincing evidence of error. We also join the Fourth Circuit in holding that where, as here, "the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part. This is especially so when the court resolved issues like witness credibility, which are factual determinations for purposes of Section 2254(e)(1)." Id. (quotation marks omitted); see Cotto, 331 F.3d at 233 ("Under 28 U.S.C. § 2254(e)(1), the fact-findings of the trial court are subject to

19

a presumption of correctness, a presumption that is particularly important when reviewing the trial court's assessment of witness credibility.") (quotation marks omitted); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude . . . that the factual premise was incorrect by clear and convincing evidence.").

### III. Cosey's Actual Innocence Claim

With these principles in mind, we consider whether Cosey's claim of actual innocence satisfies the Schlup standard.

### A. Witness Testimony

In support of his actual innocence claim, Cosey points to the testimony introduced during the § 440.10 evidentiary hearing in state court. He specifically focuses on the testimony of Summers (his ex-wife) and Bobbitt, as well as his own testimony and Hutchens's recantation testimony. As we have noted, at the hearing Summers testified as an alibi witness that she and Cosey were together at her building approximately one block away from the brownstone at the time of the shootings. Bobbitt testified that Williams was

killed by the rival gang shooting and that he saw Cosey running toward the brownstone after he had already seen Williams's dead body inside. Cosey likewise testified that he was not present at the brownstone when Williams was shot and killed by the rival gang. Finally, Hutchens recanted her prior trial testimony implicating Cosey. As the District Court summarized, at the hearing she testified that Cosey "was not present at the shooting, that she did not know who killed Williams, . . . and that she believed Williams was killed by crossfire coming from outside the [brownstone]." Cosey, 460 F. Supp. 3d at 358.

The state post-conviction court did not credit any of this testimony. To start, it found "several discrepancies" in Bobbitt's account, identified false details that "undercut[] the testimony of both Cosey and Summers," and noted "substantial financial incentive[s]" that cast further doubt on the credibility of Cosey, Bobbitt, and Summers. Cosey, 2016 WL 7812677, at *14–17. The court ultimately found that "Cosey was willing to say almost anything if he believed that doing so would serve his purpose." Id. at *17. The state court likewise found that "[i]n the course of her testimony

Hutchens's story changed," that "some of her answers show, at best, a casual disregard for accuracy," and that "[o]f her two versions of the events . . . the version that she gave at trial is more believable." Id. at *11–12.

On appeal, Cosey also points to the testimony of Anderson, the bystander who testified that he saw Cosey running toward the brownstone after the shootings but could not say that Cosey was away from the brownstone when Williams was killed. In contrast to the nonhearsay testimony of the other lay witnesses who testified at the hearing, the state court credited Anderson's testimony. Id. at *15. As the state court (and the District Court) observed, however, Anderson's testimony did not preclude the possibility that Cosey "blocked Williams from leaving the hallway before Green shot Williams, left the brownstone, and returned when he heard shots again." Cosey, 460 F. Supp. 3d at 374; see Cosey, 2016 WL 7812677, at *15. Because "[n]o one has established an exact time frame for the events of August 3," Cosey, 2016 WL 7812677, at *15, we agree with the state court (and the District Court) that Anderson's testimony does not compel the conclusion that Cosey was absent from the brownstone when Williams was killed or

22

otherwise make it more likely than not that any reasonable juror would have a reasonable doubt that Cosey participated in the murder.

Lastly, Cosey urges us to consider the testimony of investigative reporter Sarah Wallace. At the hearing, Wallace recounted a 2006 conversation with Chris Ortiz, who testified at the trial of Dushain and Green and implicated Cosey in the murder. Wallace testified that Ortiz admitted to her that Cosey was not present when Williams was killed. But, as the state court noted, Ortiz "refused to sign an affidavit or submit to a television interview on the basis that doing so might jeopardize his parole." Id. at *14. The state court rejected Ortiz's unsworn recantation statement to Wallace because it was hearsay and there was "no way to test its reliability." Id. at *14.[9]

The state court did not err in discounting Ortiz's statement. "[W]itness recantations must be looked upon with the utmost suspicion," particularly

---

[9] For the same reason, the state court had a sound basis in the record to discount the unsworn hearsay statement made by another person who did not testify at the hearing, bystander Herbert Bryant. See Cosey, 2016 WL 7812677, at *14 n.12 ("The same applies to the hearsay statements of Dushain-Lieutenant Herbert Bryant, which are in accord with the defendants' version of the events.").

23

when, as here, "the recanting witness is one who was involved in the same criminal scheme" and provides a recantation that "is general, unsworn, and conclusory." Haouari v. United States, 510 F.3d 350, 353 (2d Cir. 2007) (quotation marks omitted); see id. at 354 ("At the very least, before a recantation statement may qualify as competent evidence for habeas review, it would need to be in sworn affidavit form, subject to penalty for perjury."). Although we review record evidence as to a claim of actual innocence "without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial," Hyman, 927 F.3d at 643, under these circumstances, Ortiz's statement is not even reliable evidence, let alone clear and convincing evidence, that the factual findings of the state post-conviction court were wrong.

For these reasons, we conclude that the witness testimony at the state post-conviction hearing failed to establish that it is "more likely than not that no reasonable juror would have found [Cosey] guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327 (emphasis added).

24

## B.  Forensic Evidence

Cosey also points to forensic evidence adduced at the § 440.10 hearing that detailed the bullet's trajectory through Williams's body.  Based on our review of the record, we agree with the state court that Cosey's "strongest argument" in support of his Schlup claim is that "the path of the bullet in William's body is difficult to reconcile with" the State's narrative, which would require Williams "to have been in an odd position, and for Green to have shot him at a low and seemingly unnatural angle." Cosey, 2016 WL 7812677, at *10.  The forensic evidence is certainly troubling.  Indeed, the state court concluded that it was "improbable that the bullet path was made in the way that the People contend." Id.  But the expert witnesses who testified regarding that evidence nevertheless acknowledged that the State's theory of the bullet's path "was technically possible." Id.  We therefore cannot say that the forensic evidence, which the state court described as "ultimately inconclusive," id., establishes a credible and compelling claim of actual

25

innocence — even when considered alongside the other evidence adduced at the hearing.[10]

### C. **Cosey's Guilty Plea**

In habeas proceedings, guilty pleas are impossible to ignore. Here, each side invites us to draw very different conclusions from Cosey's 1998 guilty plea.

In urging affirmance out of the gate, the Superintendent relies on the "weighty presumption[] favoring the veracity of a defendant's sworn plea of guilty" to argue that Cosey's voluntary and knowing guilty plea presents a per se bar to his actual innocence claim. Doe, 391 F.3d at 173. We disagree that Cosey's guilty plea is categorically incompatible with his claim of innocence. To the contrary, "[a] claim of actual innocence could provide a

---

[10] In Rivas, this Court concluded that a petitioner met the requirements for the actual innocence gateway exception by presenting the "essentially unchallenged" testimony of a renowned forensic pathologist who determined to a "reasonable degree of medical certainty" that the victim was killed at a time when the petitioner had an undisputed alibi. Rivas, 687 F.3d at 543–47. During post-conviction proceedings, the State in Rivas did not call its own expert or raise any challenges to the petitioner's expert's qualifications or conclusions. Id. We determined that even this was a "close case" and that "we would not expect a lesser showing of actual innocence to satisfy the Schlup standard." Id. at 546.

26

basis for excusing [a] late filing even though petitioner pled guilty."

Friedman v. Rehal, 618 F.3d 142, 152 (2d Cir. 2010). This is because "the issue before . . . a court" considering a Schlup claim "is not legal innocence but factual innocence," and because "in rare cases a finding of guilt beyond a reasonable doubt may not be synonymous with factual guilt." Doe, 391 F.3d at 162–63. Schlup therefore "allows the court to analyze the petitioner's potential innocence in light of the fact that the petitioner is essentially claiming that the criminal justice process has reached the wrong factual result, whether after a trial or a guilty plea." Id. at 163 (emphasis added). A gateway claim of innocence is thus not barred per se by a petitioner's guilty plea. See Bousley v. United States, 523 U.S. 614, 621–23 (1998).

Conversely, Cosey exhorts us to discount, if not altogether overlook, his plea. In considering this argument, we accept that Cosey almost immediately sought to withdraw his plea on the ground that it was coerced and because he believed that Summers would provide him with an alibi. We also recognize that Cosey regards his plea allocution as falling short of a full admission of guilt. As Cosey himself acknowledges, however, we may consider his guilty

27

plea alongside the mix of other reliable evidence in the record to determine whether his claim of actual innocence excuses his untimely filing. See Doe, 391 F.3d at 169. Thus, having rejected the Superintendent's position that Cosey's guilty plea categorically bars his Schlup claim, we likewise reject Cosey's view that we should downplay his plea, which carries "a strong presumption of verity." Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999) (quotation marks omitted).

Cosey fails to rebut that presumption, especially in view of the state court's assessment, based on its observations during the evidentiary hearing, that "Cosey was willing to say almost anything" about his plea "if he believed that doing so would serve his purpose," Cosey, 2016 WL 7812677, at *17, and that "[n]either his regret" and "second thoughts about pleading guilty," "nor the realization that . . . Summers would be willing to provide him with an alibi . . . proves his innocence," id. at *16. These findings also accord with the Appellate Division's description of Cosey's claim of a defective plea as "vague and unsubstantiated" and "contradicted by his detailed factual allocution." Cosey, 730 N.Y.S.2d at 435.

28

Indeed, at his plea allocution, Cosey admitted to conspiring with Dushain and others to murder Williams. He specifically confirmed Williams's role at the Harlem brownstone and membership in the gang, identified Green as the shooter, and admitted that he "knew [Williams] was about to be killed on the orders of Carl Dushain" when he "prevent[ed] [him] from leaving" the brownstone. App'x 69. Cosey also agreed that he was "pleading guilty of [his] own free will," that no one "threatened [him] or forced [him] in anyway to take th[e] plea," and that he had talked about the plea with his attorney "at some length." Id. at 64–65. Our reading of the plea allocution itself reinforces our view that Cosey failed to rebut the presumption of verity associated with his plea.

* * *

Bearing in mind that the state post-conviction court's factual findings, including determinations of witness credibility, are entitled to the presumption of correctness under § 2254(e)(1), we agree with the District Court that Cosey has not satisfied his burden of showing by clear and convincing evidence that the state court's factual findings are wrong. Nor has

29

Cosey otherwise demonstrated that it is "more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. Because Cosey's petition fails to satisfy the high threshold standard set forth in Schlup for a gateway claim of actual innocence, we conclude that it is untimely. As a result, we cannot review the merits of his underlying claims.[11]

---

[11] In concluding that Cosey fails to establish a gateway innocence claim under Schlup, we do not further consider whether a freestanding actual innocence claim can proceed in a second or successive habeas petition, or whether Cosey's petition satisfies § 2244(b)(2)(B)(ii) on the merits. We note, however, that a freestanding innocence claim would be subject to a more demanding standard than the Schlup gateway standard. See Herrera v. Collins, 506 U.S. 390, 417 (1993) (noting that, "in capital cases," "the threshold showing for [a freestanding innocence claim] would necessarily be extraordinarily high"); House, 547 U.S. at 555 ("The sequence of the Court's decisions in Herrera and Schlup — first leaving unresolved the status of freestanding claims and then establishing the gateway standard — implies at the least that Herrera requires more convincing proof of innocence than Schlup. It follows, given the closeness of the Schlup question here, that [petitioner's] showing falls short of the threshold implied in Herrera."). Similarly, AEDPA's restrictions on second or successive habeas petitions would subject Cosey's petition to an even higher standard than the Schlup gateway standard. See House, 547 U.S. at 538–39 (distinguishing between the "clear and convincing evidence" standard of § 2244(b)(2)(B)(ii) and the Schlup "more likely than not" standard).

**CONCLUSION**

We have considered Cosey's remaining arguments in support of timeliness and conclude that they are without merit.  For the foregoing reasons, we **AFFIRM** the judgment of the District Court.

PARK, *Circuit Judge*, concurring:

Although I join the Court's opinion today, I write separately to note that a freestanding actual innocence claim cannot be heard in a second or successive habeas petition. Such a petition requires not only clear and convincing evidence of actual innocence, but also another constitutional violation.

Cosey's second or successive habeas corpus petition must show that "the facts underlying the claim, . . . would be sufficient to establish by clear and convincing evidence that, *but for constitutional error*, no reasonable factfinder would have found the applicant guilty." 28 U.S.C. § 2244(b)(2)(B)(ii) (emphasis added). In other words, Cosey must show that (1) every reasonable jury would have acquitted him *and* (2) a constitutional error occurred. "The statutory language makes perfect sense in the context of a typical constitutional claim." *In re Davis*, 565 F.3d 810, 823 (11th Cir. 2009). But it plainly cannot accommodate a freestanding innocence claim, which shows only the first. If Cosey's innocence were itself the constitutional error, as he contends, the statute would require him to show that "but for *the fact that [he] was actually innocent*, no reasonable factfinder would have found [him] guilty," which would not make sense. *Id.*; *accord Case v. Hatch*, 731 F.3d 1015, 1036-37 (10th Cir. 2013). So Cosey's successive freestanding innocence claim must fail.

This plain reading makes good sense. "Granting habeas relief to a state prisoner intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Brown v. Davenport*, 142 S. Ct. 1510, 1523 (2022) (cleaned up). This is doubly true when the state has previously defeated the prisoner's attempt to obtain release. And triply so when the new attempt relies on a novel

constitutional theory.   The Supreme Court has never held that "a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."   *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).   "Actual innocence is not itself a constitutional claim" at all. *Hyman v. Brown*, 927 F.3d 639, 656 n.10 (2d Cir. 2019) (cleaned up).[1]

Cosey suggests that section 2244(b)(2) unconstitutionally suspends the writ of habeas corpus.   But this argument is contrary to precedent.   *See Felker v. Turpin*, 518 U.S. 651, 664 (1996) (holding that the Antiterrorism and Effective Death Penalty Act's "restrictions . . . on second habeas petitions are well within the compass of [habeas's] evolutionary process, and . . . do not amount to a 'suspension' of the writ").   But in any case, Cosey can still pursue his argument in the Supreme Court's original jurisdiction, even if not in the district courts'.   While section 2244(b)(2) "inform[s]" the Supreme Court's "consideration of original habeas petitions," it does not necessarily govern it.   *Id.* at 662-63; *see also In re Davis*, 557 U.S. 952, 953-54 (2009) (Stevens, *J.*, concurring) (explaining that "unresolved legal questions" surround AEDPA's application to original petitions).[2]

---

[1]  The Supreme Court has previously assumed without deciding that a freestanding innocence claim may exist in extraordinary capital cases. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993).

[2]  Moreover, although *Felker* assumed "that the Suspension Clause of the Constitution refers to the writ as it exists today, rather than as it existed in 1789," that question remains open, *id.*, and the Court has since opined that historically, the writ could not "challenge" *any* "final judgment of conviction issued by a court of competent jurisdiction," *Brown*, 142 S. Ct. at 1520.   *See also Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1969

2

Every court of appeals to have considered this question has held that if freestanding innocence claims exist at all, they cannot be brought in cases governed by section 2244(b)(2). *See Case*, 731 F.3d at 1036-37; *Davis*, 565 F.3d at 823-24; *accord Gimenez v. Ochoa*, 821 F.3d 1136, 1143 (9th Cir. 2016). The district court reached the same conclusion in its thorough opinion in this case. *See Cosey v. Lilley*, 460 F. Supp. 3d 346, 367-69 (S.D.N.Y. 2020). I would join them in holding that a claim of actual innocence, untethered to any claim of a constitutional violation, provides no basis for a successive habeas petition.

---

n.12 (2020) (noting that "[t]he original meaning of the Suspension Clause is the subject of controversy").